## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 29 2019, 6:26 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

J. Clayton Miller
Jordan Law, LLC
Richmond, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Aaron Boggs,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | March 29, 2019<br><br>Court of Appeals Case No.<br>18A-CR-1854<br><br>Appeal from the Wayne Superior Court<br><br>The Honorable Gregory A. Horn, Judge<br><br>Trial Court Cause No.<br>89D02-0204-FA-6 |

**Barteau, Senior Judge.**

# Statement of the Case

Aaron Boggs appeals the seventy-year sentence the trial court imposed in 2003 for his convictions of three counts of burglary, one as a Class A felony and two as Class B felonies; and one count of auto theft, a Class D felony. We affirm.

# Issues

Boggs raises two issues, which we restate as:

    I.    Whether the trial court improperly enhanced Boggs' sentence based on factors not admitted or not found beyond a reasonable doubt, in violation of the holding in *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

    II.    Whether Boggs' sentence is inappropriate in light of the nature of the offense and the character of the offender.

# Facts and Procedural History

In the very early morning hours of April 28, 2002, eighteen-year-old Boggs initiated a crime spree in Wayne County after consuming a fifth of alcohol, several Xanax pills, and marijuana. Boggs first stole a vehicle from the home of Dr. Agrawal. Boggs crashed that vehicle soon after leaving the doctor's home and sustained several facial lacerations. He fled on foot, but an eyewitness later identified him as the driver.

Next, he broke into the home of Donald and Mary Cox. Mary awakened and, while walking through the house, saw that closet doors had been opened, lights

were on, and the burners on the stove were on. A bedroom door was closed. Mary woke Donald up and left the house with their three-year-old grandchild, who was spending the night with them.

[5] Seventy-year-old Donald opened the bedroom door and confronted Boggs, who Donald later described as having facial lacerations. Boggs produced a knife and stabbed Donald three times. One of the stab wounds was eight inches deep and caused a severe injury to Donald's femoral nerve. He survived, but he was no longer able to drive or swim.

[6] Meanwhile, Boggs fled from the Coxes' home, leaving a shoe there. He broke into the home of James Wolberg. No one was home. Boggs left his other shoe there, along with several items belonging to the Coxes. Boggs also broke into the home of John and Francis Markey, but no one was home.

[7] Later in the day on April 28, 2002, police officers found Boggs in Richmond, Indiana. He had in his possession shoes belonging to James Wolberg and jewelry belonging to Mary Cox.

[8] The State charged Boggs with attempted murder for his attack on Cox; Class A felony burglary in relation to the Cox residence; two counts of Class B felony burglary in relation to the Wolberg and Markey residences, respectively; and one count of auto theft, a Class D felony, in relation to Dr. Agrawal's vehicle.

[9] The trial court set bond in the amount of $500,000. Boggs filed a motion for bond reduction, which the trial court denied after a hearing. Next, Boggs filed a

motion for psychiatric evaluation to determine his competence to stand trial. The trial court appointed mental health professionals to examine Boggs and scheduled an evidentiary hearing. At the hearing, Boggs withdrew his motion to determine competence and expressed an intent to plead guilty to some of the charges.

[10] Meanwhile, the State had filed a motion for emergency pre-trial transfer, asking the trial court to order Boggs to be sent to the Indiana Department of Correction (DOC) while the case was pending. The State claimed Boggs was violent and disruptive while in the Wayne County Jail. The court granted the State's request, directing that Boggs be incarcerated in the DOC pending resolution of the case.

[11] On March 25, 2003, the trial court held a "mercy plea hearing." Tr. Vol. 1, p. 23. Boggs pleaded guilty, without a plea agreement, to three counts of burglary and one count of auto theft. Sentencing was left up to the trial court. At the same hearing, Boggs pleaded guilty to offenses in other pending cases, as follows:

| 89D02-0211-FD-114 | Class D felony battery of a law enforcement officer and Class B misdemeanor mischief |
| 89D02-0205-FD-53 | Class D felony theft |
| 89D02-0111-DF-90 | Class D felony theft |

| 89D02-0109-DF-78 | Class D felony residential entry |
| --- | --- |

[12] On April 3, 2003, the trial court held a sentencing hearing and imposed an aggregate sentence of seventy years for the current case. The State moved to dismiss the charge of attempted murder, and the court granted the motion. The court also imposed sentences in FD-114, FD-53, DF-90, and DF-78. During the hearing, the State moved to dismiss a sixth case against Boggs, 89D02-0211-FC-37, and the court granted the motion.

[13] The trial court appointed appellate counsel for Boggs for the current case but, on May 8, 2003, vacated the appointment on its own motion. In 2015, Boggs filed a pro se petition to file a belated notice of appeal pursuant to Indiana Post-Conviction Rule 2. The court denied that petition. On July 17, 2018, Boggs, represented by the Indiana State Public Defender, filed a second petition for permission to file a belated appeal pursuant to Post-Conviction Rule 2. The trial court granted the petition, and this appeal followed.

# Discussion and Decision

## I. *Blakely* Analysis

[14] Boggs argues that his seventy-year sentence violates the United States Supreme Court's decision in *Blakely*, in which the Court stated: "'Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond

a reasonable doubt.'" 542 U.S. at 301, 124 S. Ct. at 2536 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362-63, 147 L. Ed. 2d 435 (2000)). A defendant may admit to facts that increase the penalty for a crime. *Id.* at 310, 124 S. Ct. at 2541. In addition, a defendant may "consent to judicial factfinding." *Id.* at 310, 124 S. Ct. at 2541.

[15] As an initial matter, we must determine whether Boggs is permitted to raise a *Blakely* claim. The holding in *Blakely* was a new rule of conduct for criminal prosecutions and applied to cases that were pending on direct review or not yet final when *Blakely* was handed down on June 24, 2004. *Smylie v. State*, 823 N.E.2d 679, 687-88 (Ind. 2005).

[16] In Boggs' case, the circumstances are complicated because the trial court imposed a sentence on April 9, 2003, and initially appointed appellate counsel to represent Boggs. The trial court, on its own motion, subsequently vacated the appointment of counsel on May 8, 2003, and the deadline to file a Notice of Appeal elapsed. Boggs did not receive his direct appeal until 2018, when he received the trial court's permission to file a belated notice of appeal.

[17] In *Gutermuth v. State*, 868 N.E.2d 427, 428 (Ind. 2007), Gutermuth pleaded guilty to three felonies in 1997 and did not pursue a direct appeal. He later claimed the trial court failed to advise him of his right to appeal his sentence. Gutermuth filed a petition for post-conviction relief in 2000, which was denied. The United States Supreme Court handed down its decision in *Blakely* while his post-conviction appeal was pending on appeal. After the post-conviction appeal

ended unfavorably for Gutermuth, he filed with the trial court a petition for permission to file a belated appeal, which the trial court granted. On appeal, he raised a sentencing claim under *Blakely*. The Indiana Court of Appeals affirmed his sentence, and the Indiana Supreme Court took transfer to determine "whether *Blakely* applies in belated appeals pursued under Post-Conviction Rule 2." *Id.* at 430.

[18] The Indiana Supreme Court noted that belated appeals under Post-Conviction Rule 2 are "available only to those whose convictions and sentences have otherwise become final." *Id.* at 433. Further, although a belated notice of appeal is treated as if filed within the prescribed period, the Court declined to conclude that a belated direct appeal initiates a new "direct review" of the case. *Id.* Instead, the Court determined a belated appeal "is treated as though it was filed within the time period for a timely appeal but is subject to the law that would have governed a timely appeal." *Id.* Consequently, the Indiana Supreme Court held, "a defendant's case becomes 'final' for purposes of retroactivity when the time for filing a timely direct appeal has expired." *Id.* at 434. "*Blakely* is not retroactive for Post-Conviction Rule 2 belated appeals." *Id.* at 432.

[19] In this case, the trial court vacated its appointment of appellate counsel to represent Boggs, and the thirty-day deadline to file a Notice of Appeal expired. Following the holding in *Gutermuth*, Boggs may not raise a *Blakely* claim in this belated direct appeal under Post-Conviction Rule 2.

# II. Appropriateness of Sentence

Boggs asks this Court to reduce his sentence by an unspecified amount, contending the sentence is justified by neither the circumstances of the case nor his character.

Indiana Appellate Rule 7(B) provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we determine the sentence is inappropriate in light of the nature of the offense and the character of the offender.[1] *Thompson v. State*, 5 N.E.3d 383, 391 (Ind. Ct. App. 2014). In conducting our review, we may consider all aspects of the penal consequences imposed by the trial court in sentencing, including whether the sentences are ordered to run concurrently or consecutively. *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010).

A defendant bears the burden of persuading this Court that his or her sentence meets the inappropriateness standard. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Our resolution of whether a sentence is appropriate turns on myriad factors which come to light in a given case, including our sense of the culpability of the defendant, the severity of the crime, and the damage done to others. *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008).

---

[1] At the time Boggs committed his offenses, the standard of review set forth in Rule 7(B) was whether a sentence was "manifestly unreasonable," not whether it was inappropriate. Because Rule 7(B) is directed to the reviewing court, we apply the inappropriateness standard. *Polk v. State*, 783 N.E.2d 1253, 1260 (Ind. Ct. App. 2003), *trans. denied*.

[23] At the time Boggs committed the offenses at issue here, a person who committed a Class A felony could be sentenced to thirty years, with no more than twenty years added for aggravating circumstances or not more than ten years subtracted for mitigating circumstances. Ind. Code § 35-50-2-4 (1995). A person who committed a Class B felony could be sentenced to ten years, with not more than ten years added for aggravating circumstances or not more than four years subtracted for mitigating circumstances. Ind. Code § 35-50-2-5 (1977). Finally, a person who was found guilty of a Class D felony could be sentenced to one and one-half years, with not more than one and one-half years added for aggravating circumstances or not more than one year subtracted for mitigating circumstances. Ind. Code § 35-50-2-7 (1999).

[24] The trial court sentenced Boggs to the maximum sentence of fifty years for the Class A felony burglary conviction. Next, the trial court imposed sentences of ten years for each Class B felony burglary conviction, and one and a half years for the Class D felony auto theft conviction. The court ordered Boggs to serve the three burglary sentences consecutively to one another, with the auto theft sentence served concurrently, for an aggregate sentence of seventy years. The aggregate sentence was well short of the maximum possible sentence of ninety-three years.

[25] Turning to the nature of the offenses, Boggs focuses on the Class A burglary conviction, arguing "there is nothing particularly egregious about how Boggs committed the offense." Appellant's Br. p. 13. We disagree. In the middle of the night, after consuming controlled substances and alcohol (which, as a

person under the age of twenty-one, Boggs was also not supposed to consume), Boggs stole a car and promptly wrecked it, injuring himself. Undeterred by the outcome of this criminal act, Boggs broke into the Coxes' home and ransacked it. When he was confronted by seventy-year-old Donald, Boggs chose not to surrender and instead repeatedly stabbed him. The stab wounds could have been fatal to Donald, but they instead resulted in permanent nerve injuries that would prevent him from driving or swimming again and hindered his ability to climb stairs. The new limits on Donald's mobility, and the Coxes' fear resulting from Boggs' break-in, forced them to change residences.

[26] Boggs did not check Donald's injuries, and he did not contact 911. Instead, Boggs chose to flee, taking with him some of the Coxes' property. He next broke into two more homes, stealing items from at least one of them. Boggs had ample opportunities to halt his nighttime crime spree but continued in his criminal conduct.

[27] Turning to the character of the offender, Boggs was eighteen years old when he committed the offenses at issue in this case. He had a relatively lengthy juvenile record beginning in 1995, accruing adjudications for being a runaway, for being truant, and for acts that would have amounted to two counts of theft or possession of stolen property as Class D felonies, if committed by an adult. He was twice placed in the custody of the Indiana Department of Correction. In addition, he was placed on parole and failed to comply with the terms of parole, resulting in being returned to the custody of the Indiana Department of Correction for a third time.

[28] In addition, Boggs had several adult criminal cases pending when he committed the current offenses, and he was out of jail on bond. After he was arrested in the current case, he committed repeated acts of misconduct until the trial court sent Boggs to the DOC while his charges were pending. In addition, Boggs committed additional criminal acts while detained at the jail, specifically battering a law enforcement officer, a Class D felony, and criminal mischief, a Class B misdemeanor, as charged in Cause Number 89D02-0211-FD-114.

[29] Boggs argues that the following factors should result in a reduced sentence: his relatively young age at the time he committed the offenses, his expression of remorse to Mr. Cox, his lack of an adult criminal record when he committed these crimes, his lack of any prior violent offenses as a juvenile, his guilty plea, and undue hardship to his child.[2] We disagree. Boggs' lengthy juvenile record demonstrates he had ample opportunities to reform his conduct and lead a crime-free adult life. He instead committed numerous felonies after turning eighteen, in the current case and in others. Two of the offenses were violent: the Class A felony burglary charge in this case, and the Class D felony battery on a law enforcement officer in FD-114. His criminal behavior thus increased in both frequency and severity.

---

[2] Boggs claims the trial court identified several circumstances as mitigating factors but "actually failed to give Boggs any mitigation whatsoever." Appellant's Br. p. 15. To the extent Boggs is claiming the trial court should have given more weight to mitigating circumstances, that claim is unavailable on appellate review. *See Baumholser v. State*, 62 N.E.3d 411, 416 (Ind. Ct. App. 2016) ("we cannot review the relative weight assigned" to aggravating and mitigating factors), *trans. denied*.

[30] As for Boggs' guilty plea and apology to Donald Cox, we note the evidence against Boggs was solid, and his guilty plea may reflect a pragmatic decision rather than true remorse. *See Amalfitano v. State*, 956 N.E.2d 208, 212 (Ind. Ct. App. 2011) (guilty plea and expression of remorse were likely pragmatic due to the substantial evidence against defendant), *trans. denied*. Next, the trial court determined the hardship to Boggs' daughter, who was an infant at the time of Boggs' sentencing in 2003, was a mitigating factor but assigned it little weight because Boggs had not been ordered by a court to pay child support. Boggs has pointed to no evidence to counter the trial court's determination.

[31] Boggs also argues the trial court erred in considering the nature of Donald Cox's injury as an aggravating circumstance, claiming that the injury already is an inherent part of the offense as a Class A felony and that the trial court effectively enhanced his sentence twice. This argument is more properly address to whether the trial court abused its sentencing discretion, not whether the sentence is inappropriate. In any event, we disagree with Boggs' claim. When a trial court determines the individualized circumstances of the offense are an aggravating factor, there generally should be some indication that the manner in which the crime was committed was particularly egregious, beyond what the legislature contemplated when it prescribed the presumptive sentence for that offense. *Jimmerson v. State*, 751 N.E.2d 719, 724 (Ind. Ct. App. 2001).

[32] In Boggs' case, the court determined "the nature and circumstances of the crime committed, including the violent nature of the crime committed upon the victim, Donald Cox," was an aggravating factor. Tr. Vol. 1, p. 103. With

reference to the circumstances of the crime, the court also noted, "[w]hat you've done is ruined a family's life." *Id.* at 102. The court further stated, "[a]nd to see Mr. Cox and the damage that you've wreaked on his family appals [sic] me." *Id.* at 102-03. After Boggs' attack on Donald Cox, he was unable to drive or swim, and the Cox family was forced to move out of their home. The trial court sufficiently stated its reasons for identifying this aggravating factor, and we see no reason to reduce Boggs' sentence. Boggs has failed to carry his burden of demonstrating that his seventy-year sentence is inappropriate.

# Conclusion

[33] For the reasons stated above, we affirm the judgment of the trial court.

[34] Affirmed.

Vaidik, C.J., and Kirsch, J., concur.